IN THE DISTRCT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**MARK WEINBERGER** | Criminal No: 6:25- 1232<br><br>18 U.S.C. § 1349<br>18 U.S.C. § 1347<br>18 U.S.C. § 1343<br>18 U.S.C. § 2<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(7)<br>28 U.S.C. § 2461(c)<br><br>**INDICTMENT** |

THE GRAND JURY CHARGES:

Introduction

At all times material to this Indictment:

The Defendant and Relevant Individuals and Entities

1.      **MARK WEINBERGER** was a resident of the Southern District of Florida.

2.      Cypress Health Solutions LLC ("Cypress") was a durable medical equipment ("DME") company enrolled in the Medicare Program ("Medicare") that was located in Fort Pierce, Florida.

3.      Jeffrey Brooks was a resident of the Western District of New York and a beneficial owner and operator of multiple DME companies, including Cypress, and several call center entities.

4.      From in or around July 2019 through in or around December 2020, **MARK WEINBERGER** and Jeffrey Brooks were the beneficial owners and operators of Cypress; however, another individual, Individual 1, who is known to the grand jury, appeared on Medicare

1

and other paperwork as the sole owner and managing employee of Cypress.

5. From in or around May 2020 through in or around December 2020, Jeffrey Brooks was an operator and beneficial owner of Remote Solutions LLC ("Remote Solutions"), a company doing business in Greenville, South Carolina, that operated a call center.

6. Remote Solutions had a Bank of America bank account ending in x4113 that was opened in South Carolina.

7. Cypress had a SunTrust bank account ending in x8246 that was opened in Florida.

The Medicare Program

8. Medicare was a federal health care program providing benefits to individuals who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received Medicare benefits were called "beneficiaries."

9. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

10. Medicare covered different types of benefits that were separated into different parts. Medicare Part B covered, among other things, certain DME, prothesis, and orthotic devices.

11. In order to receive payment for covered items and services furnished to Medicare beneficiaries, health care providers and suppliers (collectively, "providers"), including DME companies, were required to submit a Medicare enrollment application, CMS Form 855, in which the provider certified its compliance with all Medicare-related laws and regulations, including the Federal Anti-Kickback Statute, Title 42, United States Code, Section 1320a-7b(b). Providers further agreed not to submit claims for payment to Medicare knowing they were false or fraudulent

or with deliberate ignorance or reckless disregard of their truth or falsity. If Medicare approved the application, providers were permitted to submit claims to Medicare for reimbursement for items and services provided to Medicare beneficiaries.

12.     In order to maintain active enrollment status, and as a condition of participation in Medicare, providers, including DME companies, were required to report changes in enrollment information that involved any change of ownership or control interest within 30 days of the change. Providers were also required to certify that they did not employ an individual who had been excluded from participation in Medicare.

13.     A person with an "ownership or control interest" was defined, with respect to an entity, as a person with a direct or indirect ownership interest of five percent or more, or an officer or director of the entity. A "managing employee" was defined as a general manager, business manager, administrator, director, or other individual that exercises operational or managerial control over, or who directly or indirectly conducts, the day-to-day operation of the provider, either under contract or through some other arrangement, whether or not the individual was a W-2 employee of the provider.

14.     For certain types of providers, including DME companies, the application to enroll in Medicare or make changes to enrollment was known as Form CMS-855S. Among other information, Form CMS-855S contained spaces for a provider to identify persons who have five percent or greater direct or indirect ownership interest, all managing employees, all individuals with a partnership interest in the provider, and authorized and delegated officials.

15.     Certain providers, including DME companies, were required to resubmit and recertify the accuracy of their enrollment information every three years. Among the types of information required to be provided were changes in ownership interest and/or managing control,

including listing individuals who were five percent or greater direct/indirect owners, authorized or delegated officials, partners, directors/officers, contracted managing employees, and managing employees.

### DMEPOS Claims Submitted under Medicare Part B

16. DME was reusable medical equipment such as walkers, canes, or hospital beds. Orthotic devices were a type of reusable medical equipment that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

17. To receive reimbursement from Medicare for orthotic devices, a DME company was required to submit a claim, either directly or through a billing company. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Claim forms required information, including the identity and Medicare number of the Medicare beneficiary, the item provided, and the identity and National Provider Identifier number of the referring physician.

18. To bill Medicare for orthotic devices, the orthotic devices were required to be reasonable and medically necessary, ordered by a licensed provider, and actually provided to the beneficiary. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

### Exclusion from the Medicare Program

19. The United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG") was required to exclude individuals from Medicare, Medicaid, and all Federal health care programs upon the conviction of certain defined health care offenses. Exclusion prohibited the payment by any Federal health care program, including Medicare and Medicaid, for any items or services the excluded person furnished, ordered, or prescribed in any

capacity, and further prohibited the excluded person from employment in any capacity in which the person provided any items or services that were billed to a Federal health care program. Such employment included administrative, clerical, and other activities that did not directly involve patient care or the provision of any health care-related services.

20. The minimum period of exclusion was five years. Reinstatement was not automatic; rather, an excluded person was required to reapply to the Medicare and Medicaid programs for reinstatement after the period of exclusion.

21. HHS-OIG maintained an online Exclusion Database that allowed members of the public to search by name to determine if a person had been excluded. Entities were required to screen their employees for their presence on the Exclusion List.

<u>Convictions and Exclusions of **MARK WEINBERGER**</u>

22. On or about July 20, 2012, **MARK WEINBERGER** was convicted of twenty-two counts of health care fraud, in violation of 18 U.S.C. § 1347, in the Northern District of Indiana.

23. On or about January 30, 2015, **MARK WEINBERGER** was excluded from Medicare for a minimum of fifteen years.

### COUNT 1
**(Conspiracy to Commit Health Care Fraud and Wire Fraud)**

24. Paragraphs 1 through 23 of this Indictment are incorporated herein by reference.

25. From in or around July 2019, and continuing through in or around April 2021, in the District of South Carolina and elsewhere, the Defendant, **MARK WEINBERGER**, did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Jeffrey Brooks and others, both known and unknown to the

grand jury, to commit offenses against the United States, that is:

    a.    to knowingly and willfully devise and execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

    b.    to knowingly, willfully, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

<u>Purpose of the Conspiracy</u>

26.    It was a purpose of the conspiracy for **MARK WEINBERGER**, Jeffrey Brooks, and others, both known and unknown to the grand jury, to unlawfully enrich themselves by, among other things: (a) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for the referral of beneficiaries and signed doctors' orders for braces and other documentation necessary to submit claims to Medicare (collectively, doctors' orders); (b) paying and causing the payment to purported telemedicine companies in exchange for the ordering and arranging for the ordering of braces for beneficiaries; (c) submitting and causing the submission of false and

6

fraudulent claims to Medicare for braces that were ineligible for Medicare reimbursement and medically unnecessary; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

Manner and Means of the Conspiracy

27.    The manner and means by which **MARK WEINBERGER** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

   a.   Beginning in or around July 2019, **MARK WEINBERGER** and Jeffrey Brooks were the beneficial owners of and had managing control of Cypress.

   b.   **MARK WEINBERGER** caused Individual 1's name to appear on the Form 855S and other paperwork as the sole owner and managing employee of Cypress.

   c.   **MARK WEINBERGER** and others, both known and unknown to the grand jury, submitted and caused to be submitted false and fraudulent enrollment documentation to Medicare that concealed and disguised **MARK WEINBERGER** and Jeffery Brooks' beneficial ownership and managing control of Cypress.

   d.   **MARK WEINBERGER**, Jeffrey Brooks, and their co-conspirators, both known and unknown to the grand jury, purchased and caused to be purchased Medicare beneficiaries' personally identifiable information ("PII") and purported personal health information ("PHI") from third-party call centers to generate doctors' orders for braces.

   e.   **MARK WEINBERGER**, Jeffrey Brooks, and their co-conspirators, both known and unknown to the grand jury, at call centers, including Remote

Solutions, contacted and caused to be contacted Medicare beneficiaries, including Medicare beneficiaries located in the District of South Carolina, and induced the Medicare beneficiaries to provide their PII and PHI and to agree to accept braces regardless of medical necessity.

f. **MARK WEINBERGER**, Jeffrey Brooks, and their co-conspirators, both known and unknown to the grand jury, paid and caused to be paid via interstate wire, through Remote Solutions and other entities, a purported telemedicine company illegal kickbacks and bribes to obtain a medical practitioner's signature on the doctors' orders, regardless of medical necessity, including for beneficiaries residing in the District of South Carolina and including through medical professionals licensed in the District of South Carolina.

g. **MARK WEINBERGER**, Jeffrey Brooks, and their co-conspirators, both known and unknown to the grand jury, used and caused to be used the doctors' orders to submit and cause the submission of false and fraudulent claims for braces via interstate wire to Medicare, including claims on behalf of Medicare beneficiaries residing in the District of South Carolina.

h. From in or around July 2019 through in or around December 2020, **MARK WEINBERGER**, Jeffrey Brooks, and their co-conspirators, both known and unknown to the grand jury, submitted and caused to be submitted to Medicare via interstate wire, through Cypress, false and fraudulent claims in the approximate amount of $6.7 million that were procured by the payment of illegal kickbacks and bribes, medically unnecessary, and

otherwise ineligible for reimbursement. Medicare paid approximately $3.4 million on those claims.

All in violation of 18 U.S.C. § 1349.

## COUNT 2
### (Health Care Fraud)

28.  Paragraphs 1 through 23 of this Indictment are incorporated herein by reference.

29.  From in or around July 2019, and continuing through in or around April 2021, in the District of South Carolina and elsewhere, the Defendant, **MARK WEINBERGER**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, as a principal, aider and abettor, and/or coparticipant in jointly undertaken criminal activity, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title, 18 United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program.

### Purpose of the Scheme and Artifice

30.  Paragraph 26 of this Indictment is incorporated herein by reference as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

31.  Paragraph 27 of this Indictment is incorporated herein by reference as a description of the scheme and artifice.

Acts in Execution of the Scheme and Artifice

32.     On or about the date set forth below, in the District of South Carolina and elsewhere, the Defendant, **MARK WEINBERGER**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, as a principal and/or aider and abettor, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that **MARK WEINBERGER** submitted and caused the submission of the following false and fraudulent claim for the items listed below, for the beneficiary listed below, knowing that the claims were false, fictitious, and fraudulent in that the items were medically unnecessary and ineligible for reimbursement:

| Count | Beneficiary | Approx. Claim Submission Date | Code | Items | Last 7 Digits of Claim Number | Approx. Billed Amount | Approx. Paid Amount |
|---|---|---|---|---|---|---|---|
| 2 | C.B. | 11/30/2020 | L1851 & L2397 | Left knee orthosis and suspension sleeve | x1965000 | $1,371.06 | $810.84 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 3 through 5
## (Wire Fraud)

33.     Paragraphs 1 through 23 of this Indictment are incorporated herein by reference.

### The Scheme to Defraud

34.     On or about the dates listed below, in the District of South Carolina and elsewhere, the Defendant, **MARK WEINBERGER**, and others, known and unknown to the grand jury, as a principal, aider and abettor, and/or coparticipant in jointly undertaken criminal activity,, did knowingly, willfully, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343 and 2.

### Purpose of the Scheme and Artifice

35.     Paragraph 26 of this Indictment is incorporated herein by reference as a description of the purpose of the scheme.

### Manner and Means of the Scheme to Defraud

36.     Paragraph 27 of this Indictment is incorporated herein by reference as a description of the scheme to defraud.

### Acts in Execution of the Scheme and Artifice

37.     On or about the dates specified in each count below, in the District of South Carolina and elsewhere, the Defendant, **MARK WEINBERGER**, as a principal and/or aider and abettor, for the purpose of executing and attempting to execute the scheme and artifice to defraud

11

described above, did transmit and cause to be transmitted in interstate commerce, by means of wire communications, the writings, signs, and signals further described below, each transmission constituting a separate count:

| Count | Approx. Date of Wire | Approx. Amount of Wire | Description of Wire |
|---|---|---|---|
| 3 | 11/6/2020 | $5,000 | Electronic transmission from the Cypress account ending in x8246 to the Remote Solutions account ending in x4113 |
| 4 | 11/13/2020 | $15,000 | Electronic transmission from the Cypress account ending in x8246 to the Remote Solutions account ending in x4113 |
| 5 | 11/19/2020 | $10,000 | Electronic transmission from the Cypress account ending in x8246 to the Remote Solutions account ending in x4113 |

In violation of Title 18, United States Code, Sections 1343 and 2.

# **FORFEITURE**

CONSPIRACY/HEALTH CARE FRAUD/WIRE FRAUD:

Upon conviction for violation of Title 18, United States Code, Sections 1343, 1347, and 1349 as charged in the Indictment, the Defendant, **MARK WEINBERGER**, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offenses.

PROPERTY:

Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461(c), the property subject to forfeiture includes, but is not limited to, the following:

> Cash Proceeds/Forfeiture Judgment:
>
> A sum of money equal to all proceeds the Defendant obtained, directly or indirectly, from the offenses charged in this Indictment, and all interest and proceeds traceable thereto, and/or that such sum equals all property derived from or traceable to his violations of 18 U.S.C. §§ 1343, 1347 and 1349.

SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant –

> (a) cannot be located upon the exercise of due diligence;
> (b) has been transferred or sold to, or deposited with, a third person;
> (c) has been placed beyond the jurisdiction of the Court;
> (d) has been substantially diminished in value; or
> (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the said Defendant up to the value of the above described forfeitable property;

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title

28, United States Code, Section 2461(c).

A \_\_\_\_True_____ BILL

REDACTED

_____
FOREPERSON

BRYAN P. STIRLING
UNITED STATES ATTORNEY

*[signature]*

By: Amy F. Bower (Fed. ID 11784)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
Tel.: 843-727-4381
Fax: 843-727-4443
Email: amy.bower@usdoj.gov

LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

*[signature]* with permission

By: Catherine Wagner
Senior Litigation Counsel
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Telephone: (202)794-0097
Email: Catherine.Wagner@usdoj.gov

14